## MASSIE V. MANN.

1. **Bond:** ATTORNEYS AS SURETIES. The prohibition of § 3447, of the Revision of 1860, against receiving attorneys as sureties in proceedings in court, is not limited to costs. It applies to injunction, attachment, and similar bonds, as fully as to those securing costs.

2. **Injunction:** DISSOLUTION. An order dissolving an injunction does not necessarily dismiss the suit in which it was issued.

3. —— SUPREME COURT: DISTRICT COURT. The District Court of a county in which an execution, issued from the Supreme Court, is sought to be levied, may, upon a proper showing, enjoin such levy.

4. **Mortgages:** SURETIES: SUBROGATION. A. executed a mortgage to B. to secure the payment of seven promissory notes maturing at different dates; and all of said notes, except the one first maturing, were assigned to C: A. sold the mortgaged premises to D., who undertook to pay off all incumbrances, including this mortgage, and to hold A. harmless. C. instituted proceedings to foreclose the mortgage, in which it was decreed that the proceeds should be applied first to the discharge of prior incumbrances, and the balance remaining *pro rata* to the satisfaction of all the notes. In February, 1860, the premises were sold, and the proceeds, after paying off the prior incumbrances, were applied in satisfaction of over one-half of said notes. On the 10th of March following, A. advanced to B., the holder of the first note, the amount due thereon, with the understanding that he should be subrogated to the rights of B. as against D., and caused the note to be assigned to E. In 1862, the cause having been brought to the Supreme Court by appeal, the decree was modified, so as to order that the proceeds arising from the sale of the mortgaged premises be applied in the satisfaction of the notes in the order of their maturity, instead of *pro rata;* and under the decree thus modified an execution was issued. In a proceeding to enjoin the levy of the execution, it was held:

1. That while A. and D. sustained to each other the relation of principal and surety, such relation did not affect the rights of C., the holder of the notes maturing subsequently to the one held by B.

2. That A. sustained to B. and to C. the relation of principal debtor and creditor, and that upon the payment of his debt to B., could not by subrogation acquire the rights of a surety as against C., his other creditor.

3. That the payment of the note to B. operated as a satisfaction thereof, and that the modified decree could not thereafter be enforced to provide means for its payment.

*Appeal from Dubuque District Court.*

WEDNESDAY, OCTOBER 12.

INJUNCTION to restrain a sale under an execution from this court. Graves, against complainant's objection, was allowed to intervene as defendant; claiming to be the owner of the judgment upon which the said execution issued. After this order was made, upon his motion, the action was dismissed, and from these orders complainant appeals.

*Allison & Crane* for the appellant.

*Adams & Robinson* for the appellees.

WRIGHT, Ch. J. — I. The sureties upon the injunction 1. BOND: bond, were the attorneys of the plaintiff. One attorneys as sureties. ground of the motion to *dismiss the suit*, was, that the bond was thus signed. The law is, that "no attorney or other officer of the court, shall be received as security in any proceeding in court." (Rev., § 3446.) And, though this section is found in the chapter regulating "security for costs," in our opinion, it is not limited to such cases, but was intended to prohibit their going security in any proceeding pending in court. The language is general; is imperative; and the reason of the law applies to injunction, attachment and similar bonds as fully as to those for securing costs. 2. INJUNC- And yet we are not of the opinion, that this defect TION: dis- solution of. in the bond should have operated to *dismiss the suit.* For, though the injunction for this reason (plaintiff failing to rectify the defect within a reasonable time (Rev., § 4119) might have been dissolved, it would not necessarily follow that the suit should be dismissed. An order dissolving the injunction, would not, as of course, operate to dismiss the suit. Plaintiff, waiving the injunction upon

the officer, had a right to proceed in the litigation, so far as it related to the real parties in interest.

**3. —— Su-** II. The second ground of the motion was, that
**preme** the District Court of Dubuque county had no juris-
**Court, etc.** diction to restrain by injunction an execution issued by the Supreme Court. That this position is not tenable, see *Davis* v. *Bonar · & Kearns*, 15 Iowa, 171. "After the levy of the execution, it cannot be said, that the proceedings were pending in Polk county, so far as relates to the remedy by injunction, within the meaning of § 3378 of the Revision."

**4. MORT-** III. Did the court err in allowing Graves,
**GAGE: sure-** against plaintiff's objection, to intervene, as a
**ties; subro-**
**gation.** party having an interest in the litigation? The facts are these: Sharpe made to Mann his mortgage upon certain real estate to secure seven promissory notes falling due at different periods, from 1858 to 1864. All these notes, except the one first due, were sold and assigned to plaintiff. In a proceeding to foreclose this mortgage, commenced by plaintiff, the District Court decided, after providing for some prior liens, that the remaining proceeds of the sale under the special execution, should be paid *pro rata* to plaintiff and Mann, who still held the note first due. In the Supreme Court, on Mann's appeal, this decree was so far modified as to direct that her note should be first paid, before any part of the proceeds were applied to the satisfaction of plaintiff's debt. (13 Iowa, 542.)

In February or March, 1860, the premises were sold under an execution issued from the Dubuque City Court (in which court the foreclosure proceedings were commenced), and purchased by plaintiff for the sum of $5,500, which discharged the prior incumbrances, and a little more than one-half of the amount due Mrs. Mann and the plaintiff. In 1863 the execution enjoined in this case was issued from the Supreme Court, directing the collection and application of the proceeds, in accordance with the

terms of the modified decree. The petition, after stating the above facts, alleges that Sharpe, before the appeal, and before the sale in 1860, paid off, and discharged the note to Mrs. Mann; and that she, thereafter, could not have any interest in said decree, of all which plaintiff was ignorant, until after the rendition of said last decree; and because the said first note, so held by Mrs. Mann, has been thus paid and discharged, an injunction is asked.

Graves, in his petition, shows the following facts: After admitting the making of the mortgage (which was dated November 2d, 1857), the foreclosure, sale of the premises thereunder to plaintiff, the appeal, the modification of the decree, and the second execution, denies that Sharpe paid off and discharged the claim or decree, in favor of Mrs. Mann, but advanced her the money under the following circumstances. In June, 1858, Sharpe sold and conveyed the mortgaged premises to one Beaubien, who undertook, by the express terms of his deed, to discharge, at his own expense, the liens thereon, including the Mann mortgage, and to hold said Sharpe harmless in every respect touching the same, the amount of said liens being a part of the purchase-money, and said mortgage "to be security for the payment thereof." Beaubien failed to pay said mortgage, or the decree thereon; and on the 10th of March, 1860, Sharpe advanced the amount due to Mrs. Mann, not in extinguishment of the debt, but with the intention and understanding that he was to be subrogated to the rights of the mortgagee against Beaubien, the real debtor. And, accordingly, to avoid trouble and difficulty, and to retain his equitable right to inforce the claim, he had the assignment thereof made to his bankers, Markell, Daum & Co., who assigned to Monroe, who, in July, 1863, assigned to petitioner. To the petition there was a demurrer, substantially, upon the ground, that it showed that Sharpe had paid the debt to Mrs. Mann; and petitioner, claiming under

him, has no right to insist upon the resale of the premises to again make or collect the same. The demurrer was overruled, and this ruling is now relied upon as error.

Counsel discuss the case upon its merits, without considering whether the intervenor does not show at least such an interest in the subject matter of the litigation, as entitles him to be heard, whatever the result upon the final hearing, and we shall pursue the same course. A few general propositions as applied to the question made, may be considered as well settled. And in the first place, by the transaction between Sharpe and Beaubien, the latter became the principal debtor, and the former his surety, so far as their relation to each was concerned. (*Corbett* v. *Waterman*, 11 Iowa, 86; *Moses* v. *Clerk of Dallas District Court*, 12 Id., 140; *Thompson* v. *Bertram*, Id., 476, 1 Hill, on Mortgages, §§ 23 and 59. As between them, therefore, if Sharpe, the surety, paid the debt, he would acquire a claim to the amount thereof against his principal, and a right to be subrogated to the rights of Mrs. Mann as a creditor.

But, though this is true as between the vendor and vendee, it by no means follows that the relation of principal and surety obtains as to the parties holding the liens, nor that Sharpe would have the same right of substitution, as against the rights of third persons. As to Beaubien, this right is based upon the obligation arising from, and the duties imposed upon him by this contract. The right of subrogation is not to be regarded as naked, barren and unsupported in its character. It must have its root in, and be founded upon an equity; an equity, just and reasonable, upon general principles, and sustainable against the parties to the controversy. It is also true that the petitioner occupies no better position than Sharpe. That is to say, by the assignment, under which he claims, he is entitled to no greater equity than Sharpe, the original mortgagor and

debtor. He purchased no other or greater right than the debtor possessed, and his right to relief must be measured by the same rules. For it would be most unsafe to hold, that, by assigning a claim of this character, the assignor could confer a greater or higher equity than he himself possessed. We are to treat the case as if Sharpe himself was asserting this equity against complainant. And, in determining it, we must look at his duty and rights, not in relation to, and as against Beaubien, but so far as they affect, and are connected with the creditors and mortgagees, or the present holders of the debt. One plain and manifest duty devolving upon Sharpe was, to pay the note held by Mrs. Mann. As to her and Massie, the holder of the other notes, he was the principal; and while they might, possibly, treat Beaubien as personally liable to pay the debt, they were not bound to do so, but they had the clear and undoubted right to pursue their remedy against the original debtor and the property mortgaged. Now, if he has discharged a duty which the law and his contract imposed upon him, or if he has failed to do it (upon the possible hypothesis that he *deposited* the money with Mrs. Mann, instead of paying it on his debt), upon what principle is it, that he can be subrogated to the rights of the holder of the first note, and recover the same from the party to whom he was under an obligation to see it paid and discharged? If he paid the debt, he was but discharging his own liability. He may thus have made himself the creditor of Beaubien, but not the creditor of himself. And yet, he certainly would become both creditor and debtor, if, after paying his own debt, he can make Massie, his creditor, refund it to him. And if he did not give the money to Mrs. Mann, simply and strictly as a payment, the principle would not be changed, so far as the rights of Massie are concerned. It was his duty to pay it. And if Massie is compelled now to pay this amount, in order to secure the

property against a lien which Sharpe should have discharged, he (Massie) could turn around the next moment and compel its repayment. For, if Sharpe is liable to pay, out of his general property, any deficiency remaining after exhausting the mortgaged property, and the money having been once advanced by the party liable to pay it, it would be, certainly, most anomalous that he should acquire, thereby, the right of subrogation against his creditor, to whom he was under an equitable as well as legal obligation to see the debt paid. It is no part of the duty of a court of equity to decree money to a party which, upon the plainest principles of reason and justice, he should immediately return to the party paying it. A court will not reform a claim based upon some vague and barren equity, or be guilty of the folly of giving to a party a sum of money which he should pay to his adversary, and which he has, in effect, paid, in discharge of his own liability. Than this, no more effectual means could be devised to defeat the claims of honest creditors. In thus holding, we are not unmindful that the right of subrogation is founded upon the plainest principles of natural reason and justice, long, well, and thoroughly settled and recognized. It is most equitable that the surety, paying off a debt, shall stand in the place of the creditor, and have all the rights which he has, for the purpose of obtaining his reimbursement. The right results more from equity than from contract or *quasi* contract, and cannot well be put too high. (*Hodgson* v. *Shaw*, 3 M. & K., 190; *Mathews* v. *Aiken*, 1 Comst., 595; *Remsen* v. *Beekman*, 25 N. Y., 552; *Braught* v. *Griffith*, 16 Iowa, 26, and cases there cited.) But, to apply the rule to this case, we must treat Sharpe as surety of Massie, instead of being, as he is, the principal, and liable to pay the debt to Mrs. Mann, rather than to devolve that duty upon Massie, who occupies, to Sharpe, more the position of a surety than that of principal.

Vol. XVII.—18

Because the court below erred, in overruling plaintiff's demurrer and dismissing the case, the cause is reversed, and remanded for proceedings not inconsistent with this opinion.