WILLIAM BATER, Jr., PLAINTIFF-RESPONDENT, v. ELIZA-
BETH C. CLEAVER AND MARGATE TRUST COMPANY,
DEFENDANTS, AND ATLANTIC GUARANTY AND TITLE
INSURANCE COMPANY, DEFENDANT-APPELLANT.

Argued October 18, 1934—Decided January 24, 1935.

For the appellant, *Thompson & Hanstein.*

For the respondent, *William Charlton.*

The opinion of the court was delivered by

HEHER, J. The judgment under attack was entered on a directed verdict for plaintiff. The complaint is in two counts. The gravamen of the first is that a sum of money, $2,131.50, escrowed with appellant, Atlantic Guaranty and Title Insurance Company, became plaintiff's property by reason of the fulfillment of the stipulated condition. The gist of the second is that the check of plaintiff's assignor, in the mentioned sum, payable to appellant, was "deposited" with the latter, upon condition that it was not to be "used" until appellant executed an accompanying written stipulation, outlining the terms and

conditions of the deposit; that although appellant refused to assent to the terms of the agreement, and for that reason withheld execution, it cashed the check and still retains the proceeds thereof, although no agreement for the disposition of the fund has been made.

These are the circumstances: On July 22d, 1930, one Joseph S. Byrne, acting for and on behalf of the Atlantic Hotels Corporation, agreed, in writing, to purchase from Morris Elfman a tract of land, situate in the city of Atlantic City, which was encumbered by a mortgage in the sum of $10,000, made to defendant Cleaver, and assigned by her to defendant Margate Trust Company as collateral security for unpaid loans. The mortgage was then in default, and foreclosure proceedings were imminent. There were tax arrears amounting to the first-mentioned sum. The vendee was anxious to avert foreclosure, and he asked for six months' extension of time for the payment of the mortgage from the date of the consummation of the sale. The contract of sale provided for the delivery of the deed and final settlement on October 1st, 1930, or on November 15th following, in event of the mortgage "being extended to" the date last mentioned, or any period beyond that date." There was evidence tending to establish that these negotiations eventuated in an agreement to grant the requested extension of time, and, in consideration thereof, to deposit the money in question upon the terms and conditions set forth in the paper which accompanied the deposit and which the depositary refused to execute, viz.: That the depositary would, on December 1st, 1930, "repay the same to Byrne, if on said day the above mentioned mortgage has been satisfied or all taxes, now a lien on the above mentioned premises, have been paid;" that "if said mortgage has not been satisfied or said taxes not paid," the depositary "is to continue to hold said money until the above mentioned mortgage has been fully satisfied, and if the above mentioned mortgage is foreclosed and the mortgagee does not receive the full amount of the indebtedness, then and in that event so much of the said $2,131.50 as is necessary to fully satisfy said indebtedness shall be paid to the above mentioned

mortgagee," and "the balance, if any, to be returned to the said Byrne, or his assigns." Counsel for the mortgagee, called as a witness by appellant, testified the understanding was that the deposit in question would be "paid to us in the event we have to foreclose and we *buy the property in at the foreclosure sale and do not realize the money coming to us."* The title officer of appellant, so the witness said, participated in the conference that resulted in this agreement. The deposit was made on September 30th, 1930. As pointed out, it was the money equivalent of the taxes then in arrears.

Now, this is what occurred: Byrne and his principal failed to consummate the sale. The taxes in arrears were not paid on December 1st, or thereafter, and the mortgage remaining unsatisfied, the mortgagee, Cleaver, on January 5th, 1931, instituted foreclosure proceedings, which eventuated in the sale of the mortgaged lands to the Margate Trust Company, on May 28th, 1931, for $100. On June 10th following, the sale was confirmed. On that day, Cleaver and the trust company contracted for the sale of the lands to another for $12,000—$2,000 in cash, and the balance to be secured by a purchase-money mortgage. The amount due on the decree, on the day of sale, was $11,000.01, and there were additional fees due the sheriff of $66.72, making the total amount $11,066.73. The unpaid taxes, then totaling $3,366.75, were paid by the mortgagee-purchaser. The net amount realized by the latter from the subsequent sale, including the mentioned purchase-money mortgage, was $11,633. Immediately after the sheriff's sale, the mortgagee-purchaser demanded and received from appellant the deposit in question, which, with interest, amounted to $2,447.28. There was no deficiency suit. The mortgagee, on June 10th, 1931, accepted $300 from Elfman—$100 in cash and a note for $200—in full satisfaction of the obligation evidenced by the bond. It will be observed that the ultimate net loss to the mortgagee was $53.20.

Appellant contended, at the trial, that "this money was payable immediately after the foreclosure sale, if the sale did not bring enough to satisfy Mrs. Cleaver," without regard

to the mortgagee's ability to respond for the deficiency. Respondent on the other hand, maintained (1) that there was no contract between the parties; and (2) that, if the so-called escrow agreement accurately states the contract, the depositor of the fund was responsible, to the extent of the deposit, for the payment of the obligation evidenced by the bond, and secured by the mortgage, "in the event it was not collected from Mr. Elfman," and this latter obligation having been discharged by the release, the depositor's assignee was entitled to a return of the fund. Respondent's counsel stated this issue thus: "I say the release is the important thing, and not his [the obligor's] responsibility."

The trial judge determined, as a matter of law, that while the draft of agreement which accompanied the deposit of the check, in form a receipt, was not signed by appellant, it was "expressive of the terms and conditions upon which the maker of the check delivered it to the defendant, and obviously, under the evidence, the only terms upon which the defendant was entitled to retain the check, and thereafter dispose of its proceeds," and "must be taken as a statement of the terms and conditions of the delivery of the check to this defendant, or that there were no terms and conditions agreed upon between the maker of the check and the title company with respect to the retention of the check by the title company, and the disposal of its proceeds." He concluded that, in the latter event, the depositary was "simply a holder of the check and of the proceeds thereof for the use of the plaintiff;" that, in the former, "the mortgagee, in legal effect, chose to accept the mortgaged premises, to retain the premises to the end that she might convey them, and chose also to release, as a part of this transaction, the obligor from any liability upon the bond, and had thus, in legal effect, acknowledged satisfaction of the mortgage indebtedness;" that the "mortgagee, by her acts, discharged the primary debtor from the very mortgage indebtedness to which the proceeds of this check were to be applied, if necssary;" that "the receipt itself recognizes a primary obligation, evidenced by the bond and mortgage;" that the sum in question "was

only a secondary fund to be resorted to if necessary;" and that the "extinguishment of the primary obligation, namely, decision on the part of the mortgagee to retain the property under the foreclosure sale and convey it, and her release of the mortgage indebtedness was, in legal effect, a full satisfaction of the mortgage."

In so ruling, the trial judge fell into error. First, the existence of a contract *vel non* was, under the evidence, a question of fact to be determined by the jury. Appellant's title officer, in acknowledging by letter receipt of the check and the memorandum of terms, advised plaintiff's assignor that he did "not believe that the agreement properly covers the situation," and that it was his understanding, based upon information furnished by counsel for the parties, that "this money was to be held in escrow to cover taxes only, and that *if the mortgagee failed to bid the full amount of her mortgage at the sale,* and did not purchase the property, that you were relieved from paying the money; your only obligation being that if she purchased the property and that the taxes were unpaid at the time." There was evidence tending to show that the title officer undertook to redraft the agreement, and to submit it to the parties for execution, but did not do so. On the other hand, as pointed out, counsel for the mortgagee testified that the parties, including the title officer, agreed that the mortgagee would be entitled to the deposit in the event of foreclosure, and "we [the mortgagee] buy the property in at the foreclosure sale and do not realize the money coming to us." The title officer is now deceased. In these circumstances, the weight to be given to this evidence was peculiarly for the jury. Compare *Schmidt* v. *Marconi Wireless Tel. Co.,* 86 *N. J. L.* 183. And in this posture of the proofs, it was a question of fact whether there had been an expression of mutual assent of the parties to certain and definite terms.

But assuming, as the trial judge found, that the receipt states the contractual rights and correlative duties of the parties, he manifestly misconceived the scope of the contract and Byrne's relation to the transaction and the parties.

Whether the sum in question was to be utilized, as provided by the document referred to, to satisfy the deficit, if the mortgage "is foreclosed and the mortgagee does not receive the full amount of the indebtedness," or, as testified by counsel for the mortgagee, was to be "paid to us [the mortgagee] in the event that we have to foreclose and we buy the property in at the foreclosure sale and do not realize the money coming to us," the agreement was in its essence one of indemnity against loss. Compare *Westville Land Co.* v. *Handle,* 112 *N. J. L.* 447; 171 *Atl. Rep.* 520. As in that case, the clear import of the contract, whether it be that contained in the receipt or the version given by the mortgagee's counsel, was to afford indemnity against loss sustained by reason of a deficiency in the mortgage security. If the lands were purchased, at the foreclosure sale, by a third person, and a deficiency resulted, the moneys in question were to be applied to its satisfaction. If, on the other hand, the mortgagee was the purchaser, the deficit would be, on well settled principles, the difference between the amount due on the decree and the fair value of the land, provided an appropriate equitable remedy was invoked. *Fruzynski* v. *Jablonski,* 117 *N. J. Eq.* 117; 175 *Atl. Rep.* 112; *Lurie* v. *J. J. Hockenjos Co.,* 115 *N. J. Eq.* 304; *Vanderbilt* v. *Brunton Piano Co.,* 111 *N. J. L.* 596. Byrne thereby obligated himself, in consideration of the postponement of the contemplated foreclosure proceedings, to indemnify the mortgagee, to the extent of the money equivalent of the taxes in arrears, against an ultimate deficiency in the mortgage security. This is the essence of the contract, whether it be that contained in the receipt, or as stated by the mortgagee's counsel. The fairness of the consideration for the subsequent conveyance by the mortgagee was not in issue below, nor is it raised here. Respondent's sole contention, on this phase of the case, is that the release of the obligor extinguished the indebtedness.

In such a situation, respondent could not invoke the doctrine of subrogation. It is unquestionably the rule that, when an obligation is discharged by one not primarily liable for it, but who believes himself to be acting either in the perform-

ance of a legal duty, or for the protection of a legal right, or at the request of the party ultimately bound, and even in certain other cases, favored by public policy, where none of the above circumstances may be present, the party thus discharging the obligation is entitled in equity to demand, for his reimbursement, and subject to any superior equities, the performance of the original obligation, and the application thereto of all securities and collateral rights held by the creditor. *Polhemus* v. *Prudential Realty Corp.*, 74 *N. J. L.* 570, 572; *First National Bank of Freehold* v. *Thompson*, 61 *N. J. Eq.* 188; *Pom. Eq. Jur.*, § 2343; 60 *C. J.* 694. It is a remedy which is highly favored. The courts are inclined rather to extend than to restrict the principle. Although formerly the right was limited to transactions between principals and sureties, it is now broad and expansive, and has a very liberal application. It is no longer confined to cases of suretyship; it has become more general in its application, the principle being modified to meet the circumstances of the individual case. *Ocean Accident and Guarantee Corp.* v. *Hooker Electro-Chem. Co.*, 240 *N. Y.* 37; 147 *N. E. Rep.* 351; *Dinsmore* v. *Sachs*, 133 *Md.* 434; 105 *Atl. Rep.* 524; *Pittsburgh-Westmoreland Coal Co.* v. *Kerr*, 220 *N. Y.* 137; 115 *N. E. Rep.* 465; 60 *C. J.* 705 *et seq.* While it is a doctrine of purely equitable origin and nature, it is now settled that, when the right of subrogation itself is practically conceded, and there remains to be enforced only the right of realizing the value of the subject-matter, such right may, on proper occasion, be within the cognizance of a court of law. *Polhemus* v. *Prudential Realty Corp., supra.* But the right of subrogation will not be recognized at law unless the right of action made the subject thereof is legal in its nature, and is cognizable at law. *Offer* v. *Superior Court of City and County of San Francisco,* 194 *Cal.* 114; 228 *Pac. Rep.* 11.

Assuming that such an agreement was, in fact, made, Byrne was primarily, not secondarily, liable for the payment of the mortgage debt. His contract with the mortgagor for the purchase of the property, made on July 22d, 1930, obligated him to pay a consideration price for the lands of

$32,000, in manner following, viz.: a down payment of $1,000; $9,500 to be secured by a purchase-money mortgage, subject to a first mortgage upon the premises "to be secured and created by" Byrne "before the date of settlement;" and the balance, $21,500, to be paid on or before the day of final settlement. This was an absolute and unconditional undertaking, and Byrne thereby became, as to the mortgagor, primarily liable for the payment of the mortgage debt. Thus the right of subrogation is negatived, in the event that indemnity was required. This right may be modified or extinguished by contract. The doctrine of subrogation cannot be invoked to override the contract of the parties. It is not applicable where, as here, its enforcement would be inconsistent with the terms of the contract, or where the contract, either expressly or by implication, forbids its application. 60 *C. J.* 701. In any event, Byrne's default in the performance of the contract of sale resulted in substantial loss to the mortgagor. Subrogation is designed to promote and accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience ought to pay it. It will be enforced only when the applicant therefor has an equity to invoke, and the cause is just, and its enforcement is consonant with right and justice, and then only in a clear case. *Northern Trust Co.* v. *Consolidated Elevator Co.*, 142 *Minn.* 132; 171 *N. W. Rep.* 265; 4 *A. L. R.* 510; *Paton* v. *Robinson*, 81 *Conn.* 547; 71 *Atl. Rep.* 730; *Pittsburgh-Westmoreland Coal Co.* v. *Kerr, supra; Lackawanna Trust and Safe Deposit Co.* v. *Gomeringer*, 236 *Pa.* 179; 84 *Atl. Rep.* 757; *Fidelity and Deposit Company of Maryland* v. *Long*, 138 *Tenn.* 43; 195 *S. W. Rep.* 766; *Union Mortgage Co.* v. *Peters*, 72 *Miss.* 1058, 1070; 18 *So. Rep.* 497; *Makeel* v. *Hochkiss*, 190 *Ill.* 311; 60 *N. E. Rep.* 524; *South Philadelphia State Bank* v. *National Surety Co.*, 288 *Pa.* 300; 135 *Atl. Rep.* 748. "The right of subrogation is not to be regarded as naked, barren and unsupported in its character. It must have its roots in, and be founded upon an equity; an equity just and reasonable upon general principles, and sustainable

against the parties to the controversy." *Massie* v. *Mann,* 17 *Iowa* 131. Subrogation will be denied if there are equal or superior equities in favor of those having the adverse interest. 60 *C. J.* 708.

The allowance of subrogation here would be in contravention of fundamental principles of right and justice. It would enable the defaulting party to recover from the victim of his default moneys that the former was required to pay in the performance of the contract. It would impose upon the mortgagor a burden, in favor of the defaulting party, that would not be his if the default had not occurred. The one asserting this right must himself be without fault.

The prior ruling of this court in the cause is not in point, and therefore not controlling. We there dealt with an order striking out the complaint on the ground that it did not disclose a cause of action, and held it to be erroneous. 110 *N. J. L.* 259. The then complaint (it has since been amended) averred that, "after the amount of the deficiency had been ascertained (by the foreclosure sale), all interest in the debt which was secured by the bond and mortgage made by Elfman was transferred by Mrs. Cleaver and the Margate Trust Company to an unknown person for the sum of $12,000." It was held that "the effect of the transfer was to wipe out, so far as they (Cleaver and Margaret Trust Company) were concerned, any of the indebtedness secured by the bond and mortgage and by necessary implication to surrender any claim to the fund deposited in escrow." The present complaint makes no such allegation, and the proofs disclose that such was not the fact.

Judgment reversed, and a *venire de novo* awarded.

*For affirmance*—LLOYD, BODINE, DONGES, PERSKIE, WELLS, JJ. 5.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, CASE, HEHER, KAYS, HETFIELD, DEAR, JJ. 7.