166 N.J. Super. 513 (1979)
400 A.2d 114
KEITH BERRY, PLAINTIFF,
v.
V. PONTE & SONS, DEFENDANT-APPELLANT, AND AMERICAN HOIST & DERRICK CO., ECONOMY BALER CO., HARRIS PRESS AND SHEAR CORP., BALER SERVICE AND EQUIPMENT CO., INC., WEST STREET TRUCKING, JOHN DOE, INDIVIDUALLY OR TRADING AS PROPRIETORSHIP, PARTNERSHIP OR CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 1979.
Decided March 19, 1979.
*515 Before Judges CONFORD, PRESSLER and KING.
Mr. Albert C. Lisbona argued the cause for appellant, V. Ponte & Sons (Messrs. Dwyer, Connell & Lisbona, attorneys).
Mr. Glen A. Montgomery argued the cause for respondents, American Hoist & Derrick Co., Economy Baler Co. and Harris Press & Shear Corp. (Messrs. Bennett & Bennett, attorneys; Mr. Richard D. Bennett of counsel).
No appearance for plaintiff.
The opinion of the court was delivered by PRESSLER, J.A.D.
Defendant-respondent American Hoist and Derrick Company (seller) sold an industrial machine to defendant-appellant V. Ponte and Sons (buyer). Their dispute arises out of an indemnity provision included in the contract of conditional sale whereby the buyer agreed to indemnify *516 the seller from liability "arising from injury or damage to property or person, caused in any manner by the possession, use, or operation" of the machine. Plaintiff, an employee of the buyer, lost an arm as a result of an accident occurring while he was using the machine. He settled his claim against the seller during trial, and the seller sought to enforce its right to contractual indemnity against the buyer. The buyer appeals from an order granting that relief. We affirm.
The buyer's contentions in resisting application of the indemnity agreement to this settlement are first, that the seller, by reason of its assignment of the contract, lost its status as the indemnitee; second, that the scope of the indemnity agreement did not and was not intended to include injury arising from design or manufacturing defect; and third, that permitting a manufacturer to indemnify himself in respect of his potential liability based on strict liability in tort would offend public policy.[1] We reject each of these contentions.
*517 The factual basis of the first of these contentions is the introductory language of the indemnity provision by which the buyer agreed to indemnify and hold harmless the "Secured Party." The argument which the buyer makes is that since the seller assigned the paper to a finance company virtually simultaneously with the execution of the contract, it is the finance company and not the seller who is the "Secured Party" and hence the finance company rather than the seller who is the indemnitee. We are satisfied that this argument misconceives both the language and intent of the agreement as a whole. In another clause of the contract, for example, it is stated, in explanation of the status of the contracting parties, that "Seller or any assignee hereof [is] hereinafter sometimes called the `Secured Party.'" More importantly, however, the obvious purpose of the indemnification was to protect both the seller and its assignee, whichever or both of whom might be sued by an injured person. Excepting an exposure to liability of the seller which continues beyond the assignment simply because of its financing arrangements would, in our view, patently frustrate the basic purpose for which the seller included the indemnity clause in the contract in the first place.
The buyer alternatively argues that design and manufacturing defects were not intended to be included as indemnifiable acts of the seller, and if they were, the indemnity should not be enforceable because of the dictates of public policy. We disagree.
It has long been the law of this State that in the commercial setting, where there is potential for multi-party liability based on multi-party participation in an overall transactional chain, the parties in that chain are free to allocate among themselves, as a matter of business convenience or necessity, the overall insurance burden in respect of coverage for claims of third parties arising out of the transaction as a whole. The technique for such allocation is, of course, indemnification agreements, and such indemnification may, provided the parties so agree, indemnify one in *518 respect of his own negligence. See, e.g., George M. Brewster & Son v. Catalytic Const. Co., 17 N.J. 20, 32-33 (1954); Stern v. Larocca, 49 N.J. Super. 496, 501-508 (App. Div. 1958); Doloughty v. Blanchard Constr. Co., 139 N.J. Super. 110 (Law Div. 1976). We perceive no reason why this principle should not apply to equipment sales transactions as well as to building construction contracts, the typical context in which these contractual indemnification issues are raised. Such an indemnification provision does not, in either situation, abridge the right of a claimant either to sue all who may be separately liable to him or to ultimately recover his damages. It merely determines which of the potentially liable parties defends and pays.
Nor do we find any offense to public policy in the enforcement of a broad and all-inclusive indemnity agreement in the products liability field where liability of the indemnitee is predicated on strict liability in tort. We are unpersuaded by the suggestion that manufacturers will be deterred from fabricating safe products because they can shift to another the financial consequences of liability for injury. There is certainly nothing in this record to support that supposition. We perceive, moreover, no essential difference, in terms of public policy, between permitting a manufacturer to indemnify himself and permitting the general contractor of a construction project to do so. Despite the general contractor's primary responsibility for overall project safety, we have consistently held that he may indemnify himself against his own negligence in respect thereof. See, e.g., Doloughty v. Blanchard Constr. Co., supra. Furthermore, if ordinary negligence, which connotes a modicum of active culpability on the part of the tortfeasor, may be the subject of an indemnification, we are satisfied, a fortiori, that strict liability in tort, which does not so connote, may also be subject to indemnification.
We are further persuaded, despite the buyer's argument to the contrary, that the language of the indemnity agreement here is sufficiently broad to cover design and manufacturing *519 defects. The verbiage of the clause expressly covers injury arising in any manner from the possession, use and operation of the machine. We read the breadth of the "in any manner" phrase as clearly intending to encompass latent defects in the machine which are a proximate cause of injury. We are aware of but unpersuaded by contrary construction of similar clauses elsewhere. See, e.g., Sorrentino v. Waco Scaffolding & Shoring Co., 44 Ill. App.3d 1055, 3 Ill. Dec. 559, 358 N.E.2d 1244 (App. Ct. 1976). In short, it is our view that the seller here had the right to seek absolute indemnification in respect of the machine which it placed in the stream of commerce and that it in fact both bargained for and succeeded in obtaining it.
Affirmed.
NOTES
[1] The parties do not raise as an issue the question of whether an employer may, consistent with the policy of the Workers' Compensation Act, be held as an indemnitor in respect of an injury sustained by his employee. That issue was tentatively raised below in this manner. The buyer/employer moved for and was granted summary judgment dismissing the claims of plaintiff-employee against it. The basis therefor was the bar of the Worker's Compensation Act. Thereafter, the seller moved for vacation of that summary judgment insofar as it purported to affect its cross-claim for contractual indemnification. The buyer/employer then consented to an order accomplishing that purpose. We are aware of the holding in Ruvolo v. U.S. Steel Corp., 139 N.J. Super. 578 (Law Div. 1976), immunizing an employer, on the basis of the Worker's Compensation Act, from common-law or implied indemnity in favor of a third person where both the third person and the employer have been found negligent in respect of an employee's injury. The reliance here, however, on a contractual indemnity and the fact that no ultimate finding of respective negligence was made, sufficiently distinguish this case from Ruvolo. We, therefore, decline to consider the worker's compensation issue, if any, on our own motion.