EMPLOYERS REINSURANCE CORPORATION, PLAINTIFF-AP-
PELLANT, v. FIREMAN'S FUND INSURANCE COMPANY,
DEFENDANT-RESPONDENT.

Argued September 13, 1983—Decided November 29, 1983.

*David Suarez* argued the cause for appellant (*Suarez & Suarez,* attorneys).

*Richard D. Catenacci* argued the cause for respondent (*Connell, Foley & Geiser,* attorneys; *Richard D. Catenacci* and *Patricia J. Pindar,* on the brief).

PER CURIAM.

This appeal requires us to interpret and apply a provision in an Insurance Agents and Brokers Errors and Omissions (E & O) policy. The policy was designed to protect The Burrus Agency, Inc. (Burrus), an East Orange insurance agent and broker, in the event of liability for breach of duty in its business of selling and servicing all types of insurance coverage. Fireman's Fund Insurance Company (Fireman's) furnished the E & O coverage from 1972 to August 24, 1979, through a series of one-year policies. These policies were all of the "reporting" form, providing coverage only for those claims that are *reported* during the policy period, irrespective of when the underlying act giving rise to liability occurred. The last in this series of Fireman's contracts ran from August 24, 1978 to August 24, 1979.

About one month before the end of the policy period Fireman's informed Burrus that because of "underwriting considerations" it would not renew Burrus's coverage when it expired on August 24, 1979. Burrus then obtained E & O coverage from plaintiff, Employers Reinsurance Corporation (Employers), effective August 24, 1979 to August 24, 1980. Employers' policy was also of the "reporting" type.

In July 1980 Burrus was sued by 843 North Sixth Street Associates, a partnership (Associates). The suit charged Burrus

with negligence in failing to have secured adequate insurance on a building owned by Associates. In July 1975 Burrus had agreed to provide fire insurance on the property in an amount sufficient to cover replacement costs in the event of a total loss. When the building was destroyed by fire in 1976, it was revealed that Burrus had insured it for only its actual cash value. The difference between the building's replacement value and the actual cash value was about $400,000. The claim was eventually settled for $137,500, in addition to which there were legal costs of about $7,000.

Burrus notified both Fireman's and Employers of the receipt of the complaint and the proposed settlement. Fireman's took the position that inasmuch as its policy was of the "reporting" type, it did not provide coverage for Burrus's failure in 1975 to have issued a "replacement cost" policy because Associates' claim had not been reported to Fireman's before August 24, 1979, the expiration date of its coverage. Employers likewise denied the coverage of its policy, also of the "reporting" type, claiming that Fireman's was still Burrus's insurer by operation of clause 9(b) in the Fireman's policy, the disputed clause giving rise to this litigation. Clause 9(b) reads as follows:

> *Extended Discovery Period.* In the event this Company cancels or refuses to renew this insurance, any claim made against the insured by reason of any negligent act, error or omission committed or alleged to have been committed (and which would have been insured by this policy), before the termination of this insurance, shall be deemed for the purpose of this insurance to have been made during the policy period.

Employers' contention was that given Fireman's refusal to renew Burrus's coverage, clause 9(b) operated to convert Fireman's "reporting" form policy into an "occurrence" policy—one that provides coverage for liability-producing acts committed by an insured during the policy period, without reference to when the claim is reported. Under this interpretation clause 9(b)'s function was to extend coverage to a claim made, as here, after the expiration of the Fireman's policy as long as that claim arose out of acts taking place during the policy period. Employers argued that Associates' claim was the responsibility of

Fireman's because Fireman's was the insurer on the risk when Burrus failed to provide Associates with insurance for "replacement costs"—a contention that ignores the fact that the policy whose coverage is sought to be extended covered only the period August 24, 1978 to August 24, 1979.

To resolve the question of coverage caused by the carriers' differing interpretations of clause 9(b), Employers demanded a declaratory judgment that the Fireman's policy was applicable to Associates' claim and that the Employers' policy, if involved at all, merely furnished excess coverage. Employers also sought recovery of the expenses it had incurred in defending Burrus. Fireman's answered, admitting the terms and conditions of its policy, denying coverage, and requesting a declaration of the rights of each carrier under the respective policies. On cross-motions for summary judgment the trial court denied Employers' motion and entered judgment in favor of Fireman's. In an unreported opinion the Appellate Division affirmed, one judge dissenting. Employers' appeal is here as of right. *R.* 2:2–1(a)(2).

Neither party presents any real substantive law claims; the dispute begins and ends with clause 9(b) of the Fireman's policy. In concluding that the clause did not extend coverage to Burrus for Associates' claim, the trial court perceived that the purpose of the "extended discovery period" provision was "to protect the insured against a situation in which the policy is not renewed and he has some difficulty obtaining insurance in the future, in which case Fireman's undertakes to, in essence, continue insurance and to convert the policy from a reporting policy into an occurrence policy." It determined that because the seven-year course of dealing between Burrus and Fireman's was based on a series of contracts each of which provided coverage for a one-year term, the words "this insurance" in clause 9(b) referred only to the policy in effect for each specific policy period. That led the trial court to conclude that inasmuch as Burrus's dereliction had occurred in 1975 and there had been no refusal to

renew the policy issued for *that* period, the "extended discovery" provision of clause 9(b) did not come into play.

In affirming the summary judgment in Fireman's favor the Appellate Division focused its attention on the phrase "before the termination of this insurance." That court saw the phrase as producing two conflicting interpretations of clause 9(b):

That language can be read, as it is by [Employers], to mean that where, as here, the "extended discovery period" obtains, any error or omission occurring at any time prior to the termination of defendant's policy is covered no matter when the claim is made. Alternatively the language can be read, as urged by Fireman's, to mean that coverage exists, regardless of when the claim is made, only if the error or omission occurred during the term of the policy, *i.e.*, between August 24, 1978 to August 24, 1979.

The Appellate Division found the latter interpretation to be "more appropriate." It reasoned that if the phrase "before the termination of this insurance" does not limit coverage to errors or omissions occurring during the policy period, the phrase is surplusage because were that phrase excised in its entirety, clause 9(b) "would have that very meaning." The court below chose to interpret the disputed clause as providing coverage only for errors or omissions occurring during the term of the last policy issued by Fireman's, because that reading narrowed and limited 9(b)'s coverage, thereby providing a "more objectively reasonable interpretation" of the questioned language in keeping with the intentions and expectations of the parties to the policy. The Appellate Division found entirely unpersuasive the notion that either Burrus or Fireman's "reasonably or objectively contemplated that when paragraph 9(b) comes into play, the insured is covered in perpetuity for all errors and omissions that occurred at any time prior to the termination of the policy."

The dissenter below, after first twitting his colleagues by expressing doubt that they would have reached the same result had Burrus "gone out of business upon receiving [Fireman's] notice of nonrenewal, only to be faced thereafter with a claim that accrued against the insured at a time covered by the reporting policy," concluded that clause 9(b) was not limited to extending coverage *only* for those negligent acts committed by

the insured during the last policy period. Judge Joelson observed that whereas Burrus continued to be protected, after August 24, 1979, by the Fireman's reporting policy, it remained exposed to—and uninsured for—liability for negligent acts, errors, or omissions *committed* by it *after* the expiration of that policy. Therefore, Burrus obtained the Employers policy, likewise a reporting policy, to protect itself against claims for acts committed after—as well as before—August 24, 1979 and reported during the term of Employers' coverage. As the dissenter pointed out,

> [i]t so happened that when the insured obtained that second policy, it became covered by two policies for reported claims for negligent acts, errors, or omissions committed prior to the expiration of the policy issued by [Fireman's].

Therefore, according to Judge Joelson, inasmuch as their respective "other insurance" clauses rendered both carriers excess insurers, under the facts of this case they shared equal responsibility for the loss and expenses incurred in the Burrus claim.

We agree with the reasoning of the dissent below and with its interpretation of clause 9(b). What that clause says is that Fireman's will continue, after its refusal to renew Burrus's policy, to provide the same coverage after the policy term as it provided during that term. The phrase "before the termination of this insurance" imposes the requirement that the *act* from which the claim arises must have occurred before the end of the policy period—here, August 24, 1979. The coverage is *not* extended to claims made after that date if the act giving rise to that claim also occurs after that date. In the circumstances of this case such a claim would fall within the Employers policy if reported before August 24, 1980.

True, this interpretation leaves Fireman's exposed for an indefinite period, limited only by any applicable statute of limitations. But that is the way the policy reads. Fireman's did not undertake to limit the term of this extended coverage, although we note that a similar provision in Employers' policy contains a one-year limitation ("[I]f this policy is cancelled by [Employers] * * *, this policy shall apply to claims first made

against the assured during the twelve month period immediately following the date of cancellation (hereinafter called the 'discovery period') and caused by such acts, errors or omissions occurring during any indemnity period of the policy.")

We will enforce the policy as written. The judgment of the Appellate Division is reversed and the cause remanded to the Law Division for entry there of judgment in favor of Employers for an amount equal to one-half the loss and expenses incurred in respect of the Burrus claim. No costs.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For affirmance*—None.