767 F.2d 43
 DOME PETROLEUM LIMITED, a corporation of Canada, and Dome
Energy Limited, a corporation of Canada, Appellants,
v.
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, a
mutual insurance company of Wisconsin, Frank Mulvey, Anthony
Rotella, Teresa Helen Ernst and the First Jersey National
Bank, a national bank with its principal office in New
Jersey, Appellees.
 No. 84-5533.
 United States Court of Appeals,
Third Circuit.
 Argued March 18, 1985.
Decided June 14, 1985.
As Amended July 31, 1985.
 
 Lee N. Abrams (argued), Lynne M. Raimondo, Mayer, Brown & Platt, Chicago, Ill., Morrill J. Cole, Steven R. Klein, Cole, Schotz, Bernstein, Meisel & Forman, P.A., Rochelle Park, N.J., for appellants.
 Joseph J. Fleischman (argued), Richard J. Conway, Jr., Gary C. Fischoff, Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, P.A., Newark, N.J., for appellees.
 Before SEITZ and A. LEON HIGGINBOTHAM, Circuit Judges, and GILES, District Judge*.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 The plaintiffs, Dome Petroleum Limited and Dome Energy Limited ("Dome"), appeal from an order granting summary judgment dismissing their claims against the defendants, Employers Mutual Liability Insurance Company of Wisconsin ("Employers"), the First Jersey National Bank ("First Jersey") and certain of its employees. Jurisdiction in the district court was founded upon diversity of citizenship, and this court has appellate jurisdiction over final orders pursuant 28 U.S.C. Sec. 1291 (1982).
 
 I.
 
 2
 This dispute arose out of a tender offer that Dome made for several million shares of Conoco, Inc., in May of 1981. Pursuant to this offer, Dome appointed First Jersey as the depository agent for receiving those shares tendered. As a depository agent, First Jersey was required to determine whether the tenders were timely received. On May 26, 1981, First Jersey erroneously rejected tenders of some 720,000 shares as untimely.
 
 
 3
 As a result of this error and of First Jersey's actions to prevent the loss from falling upon the timely tendering shareholders, First Jersey suffered a loss of approximately $3.5 million. The facts of this loss are set out more fully in our prior opinion. First Jersey National Bank v. Dome Petroleum Limited, 723 F.2d 335, 337-38 (3d Cir.1983).
 
 
 4
 First Jersey sought to recover its loss from Dome under an indemnification clause in the depository agreement between Dome and First Jersey. In our prior opinion, we held that Dome was obligated to indemnify First Jersey even though the error may have been due to the negligence of First Jersey's employees. 723 F.2d at 340-42. We left open, however, the question of whether Dome may be subrogated to First Jersey's claim against its insurance carrier, Employers, which was not a party to that action.
 
 
 5
 Dome then began this action against Employers, certain employees of First Jersey, and First Jersey. First, it asserted, as First Jersey's subrogee, a claim under First Jersey's errors and omissions policy with Employers which it contended covered this loss. Second, it asserted, as First Jersey's subrogee, a claim in negligence against the First Jersey employees allegedly responsible for the loss. These employees are named insureds under First Jersey's policy with Employers. Third, it asserted a direct action in its own right against the First Jersey employees. Fourth, it asserted a claim against First Jersey for interference with Dome's rights to subrogation.
 
 
 6
 The district court, upon motion for summary judgment by the defendants, dismissed all four claims. It held that subrogation was not available to Dome, that Dome had no cause of action against the employees, and that since Dome had no right of subrogation in this case, First Jersey had not interfered with it. Dome then appealed the dismissal of its claims.
 
 
 7
 On a review of a summary judgment, we do as the district court was required to do: we determine whether the record as it stands reveals any disputed issue of material fact, assume the resolution of any such issue in favor of the non-movant, and determine whether the movant is then entitled to judgment as a matter of law. First Jersey National Bank v. Dome Petroleum Limited, 723 F.2d at 338. Neither party disputes the application of New Jersey law to this diversity action.
 
 II. Subrogation
 
 8
 Under New Jersey law, subrogation is an equitable device by which the subrogee, having paid for a loss to the subrogor, steps into the shoes of the subrogor to assert any claim it had against a third party who in good conscience ought to pay for the loss. Standard Accident Insurance Co. v. Pellecchia, 15 N.J. 162, 104 A.2d 288 (1954). Dome asserts that having paid for the loss, it is subrogated to First Jersey's claim against its insurer.
 
 
 9
 The district court held that Dome could not assert a claim against Employers as First Jersey's subrogee. It determined, relying upon Pasker v. Harleysville Mutual Insurance Co., 192 N.J.Super. 133, 469 A.2d 41 (App.Div.1983), that subrogation was available only against a party that had acted wrongly by causing the loss or by breaching a contract.
 
 
 10
 As a federal court exercising diversity jurisdiction, we are bound in this case to follow the law as decided by the highest court of the State of New Jersey. The decisions of lower appellate courts are persuasive but not conclusive evidence of New Jersey law. Safeco Insurance Co. v. Wetherill, 622 F.2d 685, 688 (3d Cir.1980). Passing over the contention that the language in Pasker was dictum, we do not believe that it is a correct statement of the law of subrogation as interpreted by the New Jersey Supreme Court. The Court has stated:
 
 
 11
 "[Subrogation] is a remedy which is highly favored. The courts are inclined rather to extend than restrict the principle. Although formerly the right was limited to transactions between principals and sureties, it is now broad and expansive, and has a very liberal application."
 
 
 12
 Ambassador Insurance Co. v. Montes, 76 N.J. 477, 388 A.2d 603, 607 (1978) (quoting Bater v. Cleaver, 114 N.J.L. 346, 176 A. 889 (N.J.1935)).
 
 
 13
 The New Jersey Supreme Court has never suggested that a subrogee may only assert a claim against a wrongdoer. In fact, the New Jersey Supreme Court implicitly rejected that concept in Standard Accident Insurance Co. v. Pellecchia, 15 N.J. 162, 104 A.2d 288 (1954). In that case, a contractual guarantor of signature was held liable to the surety who had reimbursed its principal, a bank, for losses on a forged check. The Court held that the surety was subrogated to the bank's rights against the guarantor of the signature. The guarantor, a collecting bank, neither caused the loss nor breached any agreement. See also Hartford Fire Insurance Co. v. Riefolo Construction Co. Inc., 81 N.J. 514, 410 A.2d 658 (1980) (subrogee need not show "superior equities," permitting insurer to asserted subrogated claim against a third party who contracted with insured to assume risk of loss). The general rule in the United States is that a subrogee is not limited to asserting claims against third party wrongdoers, but may assert a claim against the subrogor's contractual obligor as well. G. Couch, R. Anderson & M. Rhodes, Couch on Insurance 2d Sec. 61:147 (rev. ed. 1983).
 
 
 14
 Pellecchia indicates that in a commercial setting, a subrogated claim may be asserted against any third party who bears the ultimate risk of loss, however such responsibility arises. Pellecchia, 104 A.2d at 303. In Pellecchia, the Court analyzed commercial banking practices to determine where such risk of loss fell. It then held that the purpose of the guaranty was to place contractually the risk of loss on the collecting bank. 104 A.2d at 302-03. Cf. Bater v. Cleaver, 114 N.J.L. 346, 176 A. 889 (N.J.1935) (contract of indemnity interpreted to place upon the indemnitor primary liability and thus indemnitor could not be subrogated to a claim against a third party only secondarily liable).
 
 
 15
 This approach is consonant with the general approach in New Jersey law to give effect to the private allocation of risk between commercial parties. See e.g., Mayfair Fabrics v. Henley, 48 N.J. 483, 226 A.2d 602 (1967); Berry v. V. Ponte & Sons, 166 N.J.Super. 513, 517, 400 A.2d 114, 116 (App.Div.1979), certif. denied, 81 N.J. 271, 405 A.2d 816 (1979).
 
 
 16
 Thus, in this case, the question of whether Dome may maintain its claim in subrogation can be reduced to simply asking, if both Dome and Employers agreed to indemnify First Jersey, who bore the ultimate contractual responsibility for the loss in question?[1] If it is Employers, then it should in good conscience pay for the loss, and Dome will be subrogated to First Jersey's claim. G. Couch, R. Anderson & M. Rhodes, Couch on Insurance 2d, Sec. 61:211 (rev. ed. 1983) (no right of subrogation arises when it conflicts with the parties' allocation of the risk of loss).
 
 
 17
 Ultimate responsibility for the risk of loss may arise in two ways: either through the operation of law or the agreement of the parties. In this case, there is no indication of any mandatory public policy that would require that the risk of loss fall on a contractual indemnitor as against an insurer.[2] See A. & B. Auto Stores of Jones Street, Inc. v. City of Newark, 59 N.J. 5, 279 A.2d 693 (1971); Manzo v. City of Plainfield, 59 N.J. 30, 279 A.2d 706, 708 (1971) (as between city and insurer, both of whom are liable to a property owner for losses, public policy places loss on insurer despite contractual reservation of subrogation rights). While there are cases that have held that the responsibility falls upon the contractual indemnitor, we read those cases as merely establishing that the risk of loss was upon the indemnitor by operation of the contract and not as a matter of public policy. See Bater v. Cleaver, 114 N.J.L. 346, 176 A. 889 (N.J.1935). Thus, we conclude that Dome and First Jersey were free to place contractually the ultimate risk of loss upon Employers to the extent permitted by Employers' policy with First Jersey.
 
 
 18
 In interpreting the depository agreement, the district court indicated that Dome assumed ultimate liability by its agreement to indemnify First Jersey. The indemnification clause reads:
 
 
 19
 16.1 [Dome] hereby covenants and agrees to indemnify and hold [First Jersey] harmless from and against any and all claims, actions, judgments, damages, losses, liabilities, costs and expenses of any nature whatsoever (including without limitation attorney's fees), arising directly or indirectly from, out of or incident to this Agreement and/or oral instructions delivered to [First Jersey] pursuant to this Agreement. This indemnity shall exclude only intentional and deliberate misconduct on [First Jersey's] part. [Dome] shall be subrogated to, and entitled to assert, any claim which [First Jersey] may have against any third party with respect to any items reimbursed to [First Jersey] hereunder by [Dome].
 
 
 20
 The interpretation of a contract is usually a question of law in New Jersey. First Jersey National Bank v. Dome Petroleum Limited, 723 F.2d 335, 339 (3d Cir.1983); See also Employers Reinsurance Corp. v. Fireman's Fund Insurance Co., 95 N.J. 1, 468 A.2d 421 (1983). Under New Jersey contract law, the object of interpretation is not the discovery of undisclosed subjective intent. Krosnowski v. Krosnowski, 22 N.J. 376, 126 A.2d 182, 187-88 (1956). Rather, the courts look to the objective intent manifested in the language of the contract in light of the circumstances surrounding the transaction. Communication Workers of America, Local 1087 v. Monmouth County Board of Social Services, 96 N.J. 442, 476 A.2d 777, 782 (1984); Newark Publishers' Association v. Newark Typographical Union No. 103, 22 N.J. 419, 126 A.2d 348 (1956).
 
 
 21
 We believe that under this depository agreement, Dome assumed ultimate risk of loss only in the event that there was no third party that might be liable to First Jersey. If Dome had not placed the subrogation language into paragraph 16.1, its intent would have been to assume ultimate liability. See Berry v. V. Ponte & Sons, 166 N.J.Super. 513, 400 A.2d 114 (App.Div.1979), certif. denied, 81 N.J. 271, 405 A.2d 816 (1979) (risk of loss is usually assumed through indemnification agreements). However, the subrogation language makes clear the intent that Dome assumed liability only insofar as necessary to prevent loss to First Jersey and specifically reserved the right to shift the ultimate loss onto third parties liable to First Jersey. This intent is made obvious by placing the subrogation language in the same paragraph as the indemnity language and by the specific reference in the subrogation clause to the indemnification clause.
 
 
 22
 The district court further held, however, that an insurer was not a "third party" within the meaning of the subrogation clause, because Dome never inquired about insurance during the negotiation of the depository agreement or immediately after the loss was discovered. We do not believe that these facts, even though undisputed, are sufficient to preclude Dome's claim. The language of the subrogation clause refers to "any claim ... against any third party." This language does not admit any exception for insurance companies, and Employers offers no interpretation that would reasonably exclude a claim against an insurance carrier as outside the ambit of the clause.
 
 
 23
 We must conclude that the intent was to shift the ultimate risk of loss to any third party, including an insurer, who public policy would permit to assume the risk of loss. We therefore hold that the reasonable interpretation of this objective language, given the circumstances and general purposes of the agreement, comprehends a claim against Employers.
 
 
 24
 We cannot, however, conclude at this procedural stage whether Dome or Employers is the ultimate risk-bearer. Although Dome could contract with First Jersey to shift the risk to Employers, that contractual agreement is effective only to the extent that Employers' policy with First Jersey assumed ultimate responsibility. The construction of Employers' policy was not raised in the motion for summary judgment nor was it necessary for the decision of the district court. We, therefore, will remand this claim to the district court. A proper construction of Employers' policy may show that Employers is the ultimate risk-bearer as against Dome. It may, however, show that both Employers and Dome intended to shift ultimate responsibility to each other. In that event the district court should look to suppletive rules of law to determine who the ultimate risk-bearer will be. Finally, even if Dome may be subrogated to First Jersey's claim against Employers, Employers may have substantive defenses under its policy or equitable defenses against Dome. We hold only that Dome did not bear the ultimate risk of loss by virtue of mandatory public policy or solely because of its agreement to indemnify First Jersey. Further, because we are remanding Dome's claim in subrogation against Employers, we will also remand Dome's claim that First Jersey interfered with those rights since that claim was dismissed by the district court as derivative of its dismissal of the subrogation claim.
 
 
 25
 III. Dome's Claims Against First Jersey's Employees
 
 
 26
 A. Dome's claim as First Jersey's subrogee.
 
 
 27
 Dome seeks to assert First Jersey's claim as an employer against its negligent employees. The district court dismissed Dome's claim on the ground that First Jersey has no claim against its employees, and on the ground that an employee was not a "third party" within the scope of the subrogation clause in the depository agreement.
 
 
 28
 Dome asserts that the district court erred in holding that New Jersey public policy would bar a suit by an employer against his employee for negligent performance of his duties. Compare Male v. Acme Markets, Inc., 110 N.J.Super. 9, 264 A.2d 245 (App.Div.1970) (employer may sue employee for negligent losses) with Eule v. Eule Motor Sales, Inc., 34 N.J. 537, 170 A.2d 241 (1961) (suggesting that actions by employers against employees for negligence are anachronistic). We need not reach this difficult issue of predicting the current state of New Jersey law. Assuming without deciding that an employer may sue his employee for negligent performance of his duties, Dome's claim must still fail if the employees are not "third part[ies]" within the scope of the subrogation clause.
 
 
 29
 Parties to a subrogation agreement can limit or waive their subrogation rights by contract. Standard Accident Insurance Co. v. Pellecchia, 15 N.J. 162, 104 A.2d 288 (N.J.1954). The issue is whether, in interpreting this contract as a matter of law, Dome included in the subrogation clause the right to assert claims against First Jersey's employees acting within the scope of their employment.
 
 
 30
 In interpreting this clause, we must look to the general purpose of the contract to ascertain the sense of particular terms. Krosnowski v. Krosnowski, 22 N.J. 376, 126 A.2d 182, 188 (1956). In this case, Dome agreed to indemnify First Jersey but reserved the right to assert First Jersey's claims "against any third party." The interplay between the purposes of the indemnification and subrogation clauses necessarily limits the nature of the parties against which Dome could assert a claim for reimbursement. Clearly, Dome could not assert that First Jersey was a third party and sue it for the losses that Dome had agreed also to indemnify. Further, if there were a person who could fairly be considered as the same as First Jersey, permitting Dome to assert a claim against that person would also strip the indemnification clause of its value.
 
 
 31
 When Dome and First Jersey entered into that agreement, it was implicit that First Jersey's duties would be carried out by its employees. First Jersey, as a corporate entity, can act only through its agents and employees. Insofar as their actions were within the scope of their employment, First Jersey's employees cannot be considered "third part[ies]" within the meaning of paragraph 16.1 of the depository agreement.
 
 
 32
 To interpret the depository agreement as comprehending a subrogated claim against the employees would be to in effect place a greater liability on the employee than on the employer, since the employer is protected by the indemnification clause. Although it may be possible for Dome and First Jersey to place a greater liability on the employee than on the employer, this is not the ordinary expectation. While an employee and an employer have separate legal identities, the employee usually has no greater duty to a third party than his employer. Restatement (Second) of Agency Sec. 347(2) (1958). Further, the New Jersey Supreme Court has stated that the natural expectation is for "the employer to save harmless the employee rather than the other way round." Eule v. Eule Motor Sales, 170 A.2d at 242. The general expectation is that the risk of loss will not be passed to employees. We believe that an interpretation of the subrogation clause that would pass the risk of loss to the employees, while saving the employer harmless, would be contrary to the ordinary understanding of reasonable businessmen. Such an interpretation would be an unreasonable interpretation of the language absent a specific provision putting the risk upon the employees.
 
 
 33
 Given the circumstances surrounding the depository agreement, the general purposes of indemnification, and the ordinary expectations of businessmen, we hold that First Jersey's employees were not "third part[ies]" within the meaning of paragraph 16.1 of the depository agreement, and thus, Dome has reserved no right to assert any claim that First Jersey may have had against its employees.
 
 
 34
 B. Dome's claim in its own right against First Jersey's employees.
 
 
 35
 Dome asserts that it may proceed in its own right against First Jersey's employees. The district court held that this claim was barred by collateral estoppel and by Dome's agreement to relieve First Jersey of liability. We agree with the district court on its latter rationale and, therefore, do not reach the correctness of the former.
 
 
 36
 The district court held that "it is a general rule that in an economic transaction pursuant to contract, an employee is entitled to the same limitation of liability which his employer may enjoy by the terms of the contract." It then cited the Restatement (Second) of Agency Sec. 347 (1958), which provides that:
 
 
 37
 (2) Where, because of his relation to a third person, a master owes no duty, or a diminished duty, of care, a servant in the performance of his master's work owes no greater duty, unless there has been reliance by the master or by a third person upon a greater undertaking by the servant.
 
 
 38
 Dome argues that this section is not applicable because, although it agreed to indemnify First Jersey, First Jersey was still obligated to act with due care in the performance of its duties, and thus, the employees still owed a duty of care to Dome. We believe, however, that even assuming the employees may have owed a theoretical duty of care, the principle of Section 347 would require that their liability rise no higher than their employer's. If the employer bargained for freedom from liability, that freedom must extend to the employees who are acting on behalf of the employer, unless the parties specifically contracted to give the employees lesser protection. We predict that the New Jersey Supreme Court would apply this rule.
 
 
 39
 Because Dome agreed to indemnify First Jersey against loss through the negligence of its employees, and because we believe that the employees normally owe Dome no greater duty than First Jersey owes, there can be no independent liability on the part of the employees to Dome in this case.
 
 IV.
 
 40
 Dome raises one final issue on appeal. It asserts that the district court abused its discretion in failing to permit further discovery. We believe that it is unnecessary for us to address this issue, since as to two of the claims, there were no material questions of fact and the summary judgment was properly granted. Although those two claims involved interpretation of contract provisions, and under New Jersey law, extrinsic evidence is always admissible to aid in the interpretation of a contract, Dome has offered no explanation of the contract provisions that would require further discovery.
 
 
 41
 Dome's contentions on discovery are addressed to issues relating to the claim against Employers as First Jersey's subrogee. In view of our disposition of that claim, the parties will be free to pursue discovery under the rules of civil procedure subject to the usual supervision of the court.
 
 V.
 
 42
 The judgment of the district court will be vacated with respect to Dome's claim in subrogation against Employers and its claim that First Jersey interfered with its subrogation rights, and the case will be remanded for further proceedings consistent with this opinion. The judgment of the district court will be affirmed in all other respects.
 
 
 
 *
 The Honorable James T. Giles of the United States District Court for the Eastern District of Pennsylvania sitting by designation
 
 
 [1]
 We assume for the purposes of summary judgment that Employers is liable under its policy for the loss to First Jersey
 
 
 [2]
 The law will also allocate the risk of loss in cases where the parties may privately allocate the risk, but where they have failed to allocate the risk, or have done so in an unclear or conflicting manner. See E.A. Farnsworth, Contracts Sec. 1.10 (1982) (there are two kinds of contract law, mandatory and suppletive). In this case, we examine first whether there are any mandatory rules of risk allocation, and if there are not, what the parties intended. If that intent is unclear or conflicting, then the court will apply suppletive rules to allocate the risk