**DAYS INNS OF AMERICA, INC., Plaintiff,**

v.

**P & N ENTERPRISES, INC. and Paul Yeh, Defendants.**

**No. CIVA3:97CV01374(AWT).**

United States District Court, D. Connecticut.

March 30, 2001.

Patrick J. Corcoran, Erika L. Amarante, Wiggin & Dana, New Haven, CT, John F. Conway, Loughlin, FitzGerald, Kamp, Henrici, Molloy, Rizzo & Reed, Wallingford, CT, for Plaintiff.

Martin A. Clayman, Kent D. Mawhinney, Clayman, Markowitz, Litman & Tapper, Bloomfield, CT, for Defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

THOMPSON, District Judge.

The plaintiff, Days Inns of America, brings this diversity action against defendants P & N Enterprises and Paul Yeh, a guarantor, seeking damages for trademark infringement, breach of contract and unjust enrichment. The plaintiff has moved for summary judgment on count five of the complaint, which sets forth a claim for liquidated damages for early termination of the parties' contract. For the reasons set forth below, the plaintiff's motion for partial summary judgment is being granted.

## I. *Facts*

The plaintiff, Days Inns of America ("Days Inns"), is a corporation and provider of guest lodging facility services. It is one of the largest guest lodging facility franchise systems in the United States. Through its franchise system, Days Inns markets, promotes and provides services to its guest lodging franchisees throughout the United States, including the use of its trademarks and brand names. Days Inns has invested substantial resources and time in developing goodwill in its franchise system.

### The License Agreement

Days Inns entered into a fifteen-year license agreement (the "License Agreement") (Compl.Ex. A), dated June 6, 1994, with defendant P & N Enterprises, Inc. ("P & N") for the operation of a guest lodging facility, located at 900 East Main Street, Meriden, Connecticut, Site No. 5291 (the "Facility"). Defendant Paul Yeh, the President of P & N, signed the License Agreement and also executed a Guaranty, pursuant to which he personally guaranteed P & N's obligations under the License Agreement.

Pursuant to the License Agreement, P & N was required, among other things, to make renovations to the Facility in accordance with the Days Inns System Standards, Approved Construction and Renovation Plans and Punch List, all of which were defined in or attached to the License Agreement. *See* License Agreement ¶ 3. P & N was also required to operate the Facility in compliance with the Days Inns System Standards, including Days Inns' quality assurance requirements, and to achieve and maintain certain scores on periodic quality assurance inspections conducted by Days Inns. *See id.* In order to ascertain whether P & N was in compliance with the System Standards and the License Agreement itself, Days Inns had the right, among other things, to conduct unannounced inspections of the Facility and its operations, records and trademark usages up to four times per year. *See id.* ¶ 5(b).

Days Inns had the right to terminate the License Agreement, with notice to P & N, for a variety of reasons, including P & N's: (a) failure to pay any amount due Days Inns under the License Agreement; (b) failure to remedy any other breach of its obligations or warranties under the License Agreement within 30 days after re-

ceipt of written notice from Days Inns specifying one or more breaches of the License Agreement; and (c) receipt of two or more notices of default under the License Agreement in any 12–month period, whether or not the defaults were cured. *See id.* ¶ 19(a)(ii), (iii) and (x). In the event of a termination of the License Agreement pursuant to paragraph 19, P & N was obligated to pay liquidated damages to Days Inns in accordance with a formula specified in the License Agreement. *See id.* ¶ 20. However, the License Agreement provided that upon its fifth anniversary, P & N would have the right to terminate the License Agreement without being liable to pay liquidated damages. *See id.* ¶ 29(b). During negotiations, defendant Yeh had requested that this provision take effect after three years, as opposed to five years. Days Inns had refused his request. *See* Yeh Aff. (Corcoran Aff. Ex. A (Doc. # 52)).

Under paragraph 27 of the License Agreement, P & N agreed to "pay all costs and expenses, including reasonable attorneys fees, incurred by [Days Inns] to enforce this Agreement or collect amounts owed under this Agreement or otherwise." *See id.* ¶ 27.

## The Alleged Breach of Contract

Beginning in August 1995, on five occasions, P & N was found to have failed to operate the Facility in accordance with the Days Inns System Standards. The Facility received failing scores during each of five quality assurance ("QA") inspections conducted by Days Inns on August 25, 1995; November 9, 1995; March 28, 1996; June 3, 1996; and October 11, 1996, respectively. Each time, P & N was subsequently notified of the failing score by letter. The first letter also notified P & N that pursuant to the License Agreement, it had 30 days within which to cure the QA default, and that if the default were not cured, Days Inns had the right to terminate the License Agreement. Each of the subsequent letters reminded P & N that it continued to be in default of its obligations under the License Agreement. Each of the final three letters informed P & N, in addition, that it was in monetary default to Days Inns, having failed to pay outstanding fees.

On November 12, 1996, Days Inns notified P & N by letter that it was in breach of the License Agreement because of outstanding periodic payments totaling approximately $12,254.84, that it had 10 days to cure, and that otherwise, Days Inns had the right to terminate the License Agreement.

Finally, on January 23, 1997, Days Inns wrote a letter to defendant Yeh (the "Notice of Termination") (Compl.Ex. I), informing him that it had terminated the License Agreement in accordance with its terms because P & N had failed to satisfy its financial obligations and its obligations to bring the property up to the required quality standards. Days Inns demanded that P & N immediately cease and desist from using the plaintiff's marks, advertising and any other indicia of operation as a Days Inns franchise. The Notice of Termination also demanded that P & N pay to Days Inns the outstanding periodic payments *and* liquidated damages of $214,000 for premature termination of the License Agreement. The defendants have refused to pay the liquidated damages claimed by Days Inns.

Pursuant to paragraph 8(c) of the License Agreement, Days Inns is entitled to interest on all unpaid monies under the License Agreement, which would include liquidated damages. That provision reads as follows:

> *Interest* shall accrue at the rate of the lesser of 1.5% per month or the maximum rate permitted by applicable law from the due date of any payment due

pursuant to this Agreement which remains unpaid beyond any applicable grace period and shall be payable immediately upon [P & N's] receipt of the [Days Inns'] invoice.

License Agreement ¶ 8(c). Also, pursuant to paragraph 27 of the License Agreement, P & N agreed to pay all costs and expenses, including reasonable attorneys' fees, incurred by Days Inns to enforce the License Agreement or collect amounts owed under the License Agreement:

Remedies specified in this Agreement are cumulative and not exclusive of any remedies available at law or in equity. In addition to any damages, [P & N] shall pay all costs and expenses, including reasonable attorneys' fees, incurred by [Days Inns] to enforce this Agreement or collect amounts owed by [P & N] under this Agreement or otherwise.

*Id.* at ¶ 27.

## II. *Legal Standard*

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g.,*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987); *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined … to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson:* "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a

resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Del. & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 315 (2d Cir.1997) (quoting *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock,* 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "dem-onstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993) (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock,* 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes: is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party. *See Anderson,* 477 U.S. at 248, 251, 106 S.Ct. 2505.

### III. *Discussion*

#### A. **Breach of the License Agreement**

■ A federal court sitting in a diversity case is bound to apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Here, the License Agreement provides that it will be construed in accordance with the laws of New Jersey. *See* License Agreement ¶ 28. Under Connecticut law, "parties to a contract generally are allowed to select the law that will govern their contract." *Elgar v. Elgar,* 238 Conn. 839, 850, 679 A.2d 937 (1996); *see Reichhold Chems., Inc. v. Hartford Accident and Indem. Co.,* 252 Conn. 774, 788, 750 A.2d 1051 (2000). Neither party contests the validity of the choice-of-law provision in the License Agreement. Accordingly, the court applies New Jersey law in construing the License Agreement.

"The interpretation of a contract is usually a question of law in New Jersey.... [T]he courts look to the objective intent manifested in the language of the contract in light of the circumstances surrounding the transaction." *Dome Petroleum, Ltd. v.*

*Employers Mut. Liab. Ins. Co.*, 767 F.2d 43, 47 (3d Cir.1985) (citations omitted). Where a contractual provision is clear and unambiguous, there is no factual issue. *See First Jersey Nat'l Bank v. Dome Petroleum Ltd.*, 723 F.2d 335, 339 (3d Cir. 1983).

Here, the parties do not dispute that the termination provisions of the License Agreement are clear and unambiguous. P & N, as the licensee, agreed, among other things, to "operate the Facility continuously and in strict compliance with the System and all System Standards." License Agreement ¶ 16(c)(v). Additionally, P & N agreed to achieve certain minimum quality assurance scores during periodic inspections by Days Inns' QA inspectors. *Id.* ¶ 3. Additionally, as described above, the parties agreed to the terms under which Days Inns could terminate the License Agreement with notice. *Id.* ¶ 19(a). It is undisputed that P & N failed to meet Days Inns Systems Standards five times during the period from September 1995 through October 1996 and that each failure constituted a breach of P & N's obligations under paragraph 3 of the License Agreement ("Improvement Obligations"). It is also undisputed that the defendants failed to remedy each of those five breaches of their Improvement Obligations within 30 days after receipt of written notice from Days Inns, thus giving Days Inns the right under paragraph 19(a)(iii) to terminate the License Agreement upon notice. On one occasion, by a letter dated February 1, 1996, the defendants attempted to address their QA failures by submitting a proposed schedule of renovations they would undertake. *See* Miller Aff. Ex. E (Doc. # 51). However, Days Inns informed the defendants that their proposal was not acceptable because it would not bring the Facility into compliance with the minimum QA standards set forth in the License Agreement, and it was too far into the future. *See* Miller Aff. Ex. F.

It is undisputed that the defendants failed to pay Days Inns $12,254.84 which was due under the License Agreement within 10 days after receipt of a written demand for payment, thus giving Days Inns the right to terminate the License Agreement upon notice. *See* License Ag. ¶ 19(a)(ii). Therefore, Days Inns had two grounds pursuant to paragraph 19 for terminating the License Agreement upon notice.

### B. *Liquidated Damages Clause*

The determination as to whether a liquidated damages clause is valid and enforceable is, as with any other type of unambiguous contractual provision, a question of law for the court. *See Nevets C.M. Inc. v. Nissho Iwai Am. Corp.*, 726 F.Supp. 525, 531 (D.N.J.1989), *aff'd*, 899 F.2d 1218 (3d Cir.1990).

Stipulated damages clauses are presumptively valid in New Jersey, and the burden of proof and persuasion rests on the party challenging any such clause. *Wasserman's Inc. v. Township of Middletown*, 137 N.J. 238, 645 A.2d 100, 108 (1994).

In commercial transactions between parties with comparable bargaining power, stipulated damage provisions can provide a useful and efficient remedy. *See Priebe & Sons v. United States*, 332 U.S. 407, 411–13, 68 S.Ct. 123, 92 L.Ed. 32[ ] (1947) (observing that "[t]oday the law does not look with disfavor upon 'liquidated damages' provisions in contracts[ ][w]hen they are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach"). Sophisticated parties acting under the advice of counsel often negotiate stipulated damages clauses to avoid the cost and uncertainty of litigation. Such par-

ties can be better situated than courts to provide a fair and efficient remedy. Absent concerns about unconscionability, courts frequently need ask no more than whether the clause is reasonable. *Id.*

 The standard for determining whether a stipulated damages clause is an unenforceable penalty or an enforceable provision for liquidated damages is reasonableness under the totality of the circumstances: "a stipulated damage clause must constitute a reasonable forecast of the provable injury resulting from breach; otherwise, the clause will be unenforceable as a penalty and the non-breaching party will be limited to conventional damage measures." *Id.* at 106 (quotation marks and citation omitted). "[E]nforceability of stipulated damages clauses [depends] on whether the set amount 'is a reasonable forecast of just compensation for the harm that is caused by the breach' and whether that harm 'is incapable or very difficult of accurate estimate.'" *Id.* at 106–07 (quoting *Westmount Country Club v. Kameny,* 82 N.J.Super. 200, 206, 197 A.2d 379 (1964); citing *Wallis Iron Works v. Monmouth Park Ass'n,* 55 N.J.L. 132, 140–41, 26 A. 140 (E. & A. 1892); *Wood v. City of Ocean City,* 85 N.J.Eq. 328, 330, 96 A. 489 (Ch.1915); *218–220 Market St. Corp. v. Krich–Radisco, Inc.,* 124 N.J.L. 302, 305, 11 A.2d 109 (E. & A.1939)). "[T]he parties' characterization of stipulated damages as 'liquidated damages' or as a 'penalty' is not dispositive." *Id.* at 107, 11 A.2d 109. New Jersey courts assess reasonableness either at the time of contract formation or at the time of the breach. *Id.*

 Here, the defendants argue that the liquidated damages clause is an unenforceable penalty for two reasons: first, because actual damages were capable of being calculated and second, because the amount of stipulated damages was dispro-

portionate to the actual loss to Days Inns. In support of their first argument, the defendants assert that at the time of contract formation, Days Inns had enough information to calculate the actual damages it would suffer in the event of an early termination. The defendants assert that it was sufficient that Days Inns knew: 1) the room rates that P & N planned to charge, 2) the occupancy rates of the Facility from the time period when it had previously been operated as a Days Inns franchise, 3) the average occupancy rates for Days Inns' other franchisees, 4) the percent of gross room revenue due Days Inns under the License Agreement, and 5) the average time period to replace a franchisee. The defendants also contend that Days Inns had sufficient information to calculate actual damages at the time of termination, because actual damages could have been calculated as twice the multiple of P & N's 1996 revenues and the percentage of gross revenue due Days Inns. The figure resulting from the defendants' calculation is approximately one-fourth of the amount determined pursuant to paragraph 20 of the License Agreement.

Applying the first prong of the reasonableness test, the court finds that the liquidated damages provision in the License Agreement constituted a reasonable forecast of just compensation for the harm caused by the early termination, both at the time of contract formation and at the time of the breach. On the other hand, the defendants' proposed means of calculating actual damages are not reasonable. As to calculations at the time of the execution of the License Agreement, there are too many unaccounted for variables for the methodology suggested by the defendants to be reliable. For instance, factors that determine what revenues will be in this industry are subject to fluctuation based on market conditions. In addition, the

occupancy rates and room rates for the Facility would have been as tied to P & N's compliance with the quality assurance standards as to occupancy rates for a prior franchisee or average occupancy rates for Days Inns franchisees. As to the calculation at the time of termination, the defendants' proposed means of calculating damages is not reasonable because it relies on P & N's gross revenues from 1996, a year during which it repeatedly failed quality assurance inspections and during which the plaintiff received complaints from customers about the Facility. *See* Compl. ¶ 39. Moreover, New Jersey courts disfavor stipulated damage amounts based on gross receipts.

> Whether measured from the time of execution of the contact or from the termination of the lease, *see Westmount Country Club* [ ], 82 N.J.Super. at 206, 197 A.2d 379[ ], damages based on gross receipts run the risk of being found unreasonable. Generally speaking, gross receipts do not reflect actual losses incurred because of the cancellation. Gross receipts, unlike net profits, do not account for ordinary expenses; nor do they account for the expenses specifically attributable to the breach.

*Wasserman's Inc.*, 137 N.J. 238, 645 A.2d 100, 109. Also, a reliable calculation of actual damages cannot be made on the basis of an assumption that it would take two years to find a replacement where, in fact, at the time of termination, there were twelve years remaining on the term of the License Agreement.

The defendants argue that Wayne Miller, the plaintiff's Vice President of Franchise Administration, admitted in his deposition that actual damages from early termination would have been capable of calculation. However, all Miller admitted was that the recurring fees that P & N owed under the Franchise Agreement were capable of calculation. *See* Miller Aff. at 56 (Corcoran Aff. Ex. I (Doc. # 85)). Miller then went on to explain why he does not believe one can calculate actual damages. *See id.* at 56–57, 59, 78–79. Therefore, the court concludes that the liquidated damages provided for in the License Agreement are a reasonable estimate of just compensation.

As to the second prong of the reasonableness test, the court concludes that actual harm was very difficult to accurately estimate, both at the time of contract formation and at the time of the breach. The court finds persuasive the plaintiff's recitation of variables which would have made the prospective calculation of actual damages very difficult: whether P & N would comply with Days Inns' quality assurance standards, whether room rates would increase if occupancy rates increased, whether competitors would enter the Meriden market, the state of the national and regional economies, and whether fuel prices would rise to the extent of curtailing travel. *See* Pltf's Reply at 11–12. *See Days Inns of Am., Inc. v. VNR, Inc.*, No. 98–2507, Letter Op. at 28 (D.N.J. Mar. 23, 1999) ("Given the nature of the transient lodging business, it appears gross room revenues could drastically fluctuate from month to month depending upon factors such as the national, regional and local economies, the travel patterns of vacationers, and the entry and withdrawal of competitors. Accordingly, it appears actual compensatory damages would be difficult to ascertain."); *Ramada Franchise Sys., Inc. v. Bhatt*, No. 96CV737 (RNC), Ruling on Cross Mots. for Summ. J. (D.Conn. Jan. 8, 1999) ("[I]n the event of an early termination the value of lost future royalties would be difficult to determine. That value would be a function of the time remaining on the contract, defendant's success in operating the facility and market conditions. The latter two variables would be

'incapable of precise estimation,' and subject to fluctuation over time." "). The court notes that several courts have found provisions like the one in paragraph 20(a) of the License Agreement to be enforceable. *See id.; VNR,* No. 98–2507; *Ramada Franchise Sys., Inc. v. Polmere Lodging Corp.,* No. 99–2809(WGB), Op. (D.N.J. July 30, 1999); *Howard Johnson Int'l, Inc. v. I–20 Ltd. II,* No. 97–1613, slip op. (D.N.J. Aug. 27, 1998); *Howard Johnson Int'l, Inc. v. R.S. Hospitality, Inc.,* No. 96–3799(NHP), Letter Op. (D.N.J. Dec. 2, 1998); *Ramada Franchise Sys., Inc. v. The Chalet Enters., Inc.,* No. 97–34(JCL), Mem. and Order (D.N.J. July 31, 1997).

■ The defendants also contend that the plaintiff refused to negotiate with two potential franchisees. However, the issue of mitigation of damages is not relevant where the parties have expressly sought to avoid the vagaries of damages calculations by means of using a liquidated damages clause. *See Westmount Country Club v. Kameny,* 82 N.J.Super. 200, 197 A.2d 379 (N.J.Super.Ct.App.Div.1964) (where provision is found to be a penalty and not liquidated damages clause, only then does plaintiff have the right to introduce evidence as to mitigation of damages); *Lesk v. Warnaco Group,* No. 92 CIV. 6335(KMW), 1995 WL 11047 (S.D.N.Y. Jan.11, 1995) (where valid liquidated damages clause fixes the sum payable, there is no further inquiry into mitigation).

Finally, relying upon defendant Yeh's statement that the License Agreement covered 92 rooms, the defendants contend that the plaintiff improperly bases its calculation of liquidated damages on the figure of 107 rooms. *See* Yeh Aff. ¶ 15. However, Schedule B of the License Agreement clearly describes the Facility as having 107 rooms. License Agreement at 29.

Accordingly, Days Inns is entitled to liquidated damages in the amount of $214,000 under the terms of the License Agreement, plus interest and reasonable attorneys' fees.

#### C. *Notice of Termination*

Finally, the defendants claim that there are three genuine issues of material fact as to whether they received adequate notice of the termination of the License Agreement. First, the defendants contend that the Notice of Termination was defective because it did not comply with the requirements set forth in paragraph 26 of the License Agreement:

> 26. *Notices.* Notices will be effective hereunder when and only when they are reduced to writing and delivered, by next day delivery service, with proof of delivery, or mailed by certified or registered mail, return receipt requested, to the appropriate party at its address stated below or to such person and at such address as may be designated by notice hereunder. Notices shall be deemed given on the date delivered or date of attempted delivery, if service is refused.

The defendants claim that the Notice of Termination was neither sent by certified mail nor proven to be sent by next day delivery service. However, there is no dispute that at the bottom of the Notice of Termination, there is a strip of Airborne Express tracking information, which shows that the notice was sent on January 23, 1997 and, at the top of the Notice of Termination, there is handwriting to the effect that an "M. Migliorina" received the letter at 9:42 a.m. on January 24, 1997. The defendants do not counter these facts. Thus, the court concludes that there is no genuine issue as to whether the Notice of Termination was mailed in a manner that complied with the License Agreement.

Second, the defendants argue that the Notice of Termination was mailed to an incorrect party and address. It is addressed to:

Mr. Paul Yeh

225 Lordship Blvd.

Stratford, Connecticut 06497

ATTN: Mr. Paul Yeh

The defendants contend that the plaintiff was required to mail the notice to the party and address set forth in the License Agreement:

*LICENSEE*

P & N Enterprises, InC.

35 Hawthorne Mead

Glastonburg, Connecticut 06033

Attention: Paul Yeh

However, in October 1996, defendant Yeh had requested that, beginning November 1, 1996 the plaintiff send all correspondence to him at the 225 Lordship Blvd. address. *See* Corcoran Aff. Ex. C. This postal change-of-address form is contemplated by the provision in paragraph 26 that notices be mailed "to the appropriate party at its address stated below *or to such person and at such address as may be designated by notice hereunder.*" License Agreement ¶ 26 (emphasis added). Thus, the Notice of Termination was sent, at a minimum, substantially in accordance with the provisions of paragraph 26.

Third, the defendants contend that the Notice of Termination was given in violation of Conn. Gen.Stat. § 42–133f, which requires a sixty-day notice prior to termination of a franchise. However, paragraph 19(a) of the License Agreement provided: "The Company may terminate this [License] Agreement at any time, effective upon the date specified in the termination notice *(or the earliest date permitted by applicable law)." Id.* ¶ 19(a) (emphasis added). Days Inns asserts that it recognized that the effective date of termination

was sixty days after the January 23, 1997 notice, as required by Conn. Gen.Stat. § 42–133f, and that as a result, it took no action to prevent the defendants from running the Facility as a Days Inn prior to the expiration of the sixty-day period. The defendants have not produced any evidence to contradict the plaintiff's assertions. Accordingly, the court concludes there is no genuine issue as to whether the Notice of Termination was given in violation of Conn. Gen.Stat. § 42–133f.

## IV. *Conclusion*

The plaintiff's Motion for Summary Judgment (Doc. # 48) is hereby GRANTED as to Count Five of the complaint. Days Inns is awarded liquidated damages in the amount of $214,000 together with prejudgment interest at the rate of 1.5% per month and reasonable attorneys' fees.

It is so ordered.